IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOMINICK DANIEL,<br>                    **Plaintiff,**<br><br>          v.<br><br>GREENWOOD GAMING SERVS. CO.,<br>doing business as "PARX CASINO," and<br>GREENWOOD GAMING AND<br>ENTERTAINMENT, INC., doing business<br>as "PARX CASINO,"<br>                    **Defendants.** | CIVIL ACTION<br><br><br><br>NO.  24-2584 |

HODGE, J.                                                                                                    **March 5, 2026**

## MEMORANDUM

In this action, Plaintiff Dominick Daniel ("Mr. Daniel" or "Plaintiff") asserts the following claims against his former employer, Greenwood Gaming Services Co. d/b/a Parx Casino and Greenwood Gaming and Entertainment, Inc. d/b/a Parx Casino ("Defendants"): (1) race and color discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) race and color discrimination in violation of the Pennsylvania Human Relations Act ("PHRA"); (3) disability discrimination in violation of the Americans with Disabilities Act ("ADA"); (4) disability discrimination in violation of the PHRA; (5) retaliation in violation of Title VII; (6) retaliation in violation of the ADA; and (7) retaliation in violation of the PHRA. (ECF No. 1.) Defendants moved for summary judgment on all claims (ECF No. 13 (the "Motion")) and Plaintiff opposed Defendants' Motion (ECF No. 18 (the "Response")). For the reasons that follow, Defendants' Motion is granted.

## I.    BACKGROUND[1]

Mr. Daniel—who is African American, Black, and has manic depression—was hired by Defendants for the position of server at Parx Casino on August 15, 2022. (ECF No. 18-2 ¶ 1; ECF No. 18-3 at 3.) On February 1, 2023, Plaintiff was reassigned to work out of Defendants' Shippensburg location for approximately two weeks to assist with the opening of a new casino. (ECF No. 18-2 ¶ 2; ECF No. 18-3 at 4.) Shortly after Plaintiff was reassigned to Defendants' Parx Casino location, on February 16, 2023,[2] Plaintiff was admitted to the hospital based on exacerbated symptoms of his manic depression. (ECF No. 18-2 ¶ 2; ECF No. 18-3 at 4.)

On February 27, 2023, Dawn Bauman ("Ms. Bauman"), an employee from Defendants' Human Resources Department, wrote an email to Susan Eckert ("Ms. Eckert"), an employee of Defendants, stating that she spoke with Plaintiff on the phone and advised him that he would need a note from his doctor to return to work. (ECF No. 18-2 ¶ 3.) On March 8, 2023, Ms. Bauman wrote a letter to Plaintiff explaining that Defendants were in receipt of his March 6, 2023 clearance from his doctor to return to work and his request for leave for his health condition. (ECF No. 18-2 ¶ 3; ECF No. 13-11 at 2.) The letter informed Plaintiff that he was not eligible for leave under the Family and Medical Leave Act ("FMLA") and/or personal leave of absence, as he had not yet met the employee eligibility requirements. (ECF No. 18-2 ¶ 5; ECF No. 13-11 at 2.) However, Ms. Bauman wrote that "as a one-time courtesy, [Plaintiff] ha[d] been removed from the schedule from 2/18/2023 through 3/5/2023." (ECF No. 18-2 ¶ 6; ECF No. 13-11 at 2.) The letter advised Plaintiff that he could contact Defendants for the appropriate paperwork if he required an accommodation

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] Defendants' Statement of Undisputed Material Facts (ECF No. 13-3) does not provide the date that Plaintiff was admitted to the hospital. Although the Plaintiff's Responses to Defendants' Interrogatories state that Plaintiff was admitted to the hospital on February 16, 202*4*, February 16, 2023 appears to be the correct date, as Plaintiff was terminated in 2023. (ECF No. 18-3 at 4.)

to perform the essential duties of his position. (ECF No. 18-2 ¶ 7; ECF No. 13-11 at 2.) Plaintiff ultimately returned to work on March 8, 2023. (ECF No. 18-2 ¶ 8.)

On March 14, 2023, Ms. Bauman wrote an email to Ms. Eckert and Rebecca Carr ("Ms. Carr"), another employee of Defendants, stating that she called Plaintiff to explain that his department had concerns about his job performance and that if he needed an accommodation or additional time off, Defendants could assist him in obtaining them. (ECF No. 18-2 ¶¶ 9–10; ECF No. 13-14 at 2.) According to the email, Plaintiff told Ms. Bauman that he had not gotten any sleep the night before and had a bad day. (ECF No. 13-14 at 2.) Plaintiff also told Ms. Bauman that he did not need to take any further time off from work and was ready to work his shift that night. (ECF No. 18-2 ¶ 11; ECF No. 13-14 at 2.)

Plaintiff did return to work for his scheduled shift the evening of March 14, 2023. (*See* ECF No. 18-2 ¶ 13; ECF No. 13-7 at 2.) On March 15, 2023, Kathleen McGinnis ("Ms. McGinnis"), an employee of Defendants, wrote a letter that summarized the concerns that Mr. Daniel's coworkers had voiced about his behavior at work over the course of the previous three weeks and a meeting that Ms. McGinnis had with Plaintiff that day regarding his concerning behavior. (ECF No. 18-2 ¶ 13; ECF No. 13-7 at 2.) In the letter, Ms. McGinnis explained that since returning from the Shippensburg location, Plaintiff had pursued female staff romantically, asked team members for money, and made staff "afraid of him and his aggressiveness." (ECF No. 13-7 at 2.) The letter states that two coworkers indicated and signed statements explaining that Mr. Daniel fought with a guest on March 14, 2023 and that his "irritable and erratic" behavior had made staff "uncomfortable." (ECF No. 18-2 ¶ 13; ECF No. 13-15 at 2; ECF No. 13-16 at 2; ECF No. 13-7 at 2.) Ms. McGinnis's letter indicates she sent Plaintiff home March 14, 2023 due to his

behavior and that she believed he should be taken off the schedule "until he gets himself straightened out." (ECF No. 13-7 at 2.)

On March 16, 2023, Ms. Bauman sent an email to Ms. Eckert and Ms. Carr stating that she had called Plaintiff and spoke to him about how "he was sent home from work on Wednesday after becoming argumentative with a guest." (ECF No. 18-2 ¶ 14; ECF No. 13-18 at 2.) Ms. Bauman wrote that she let Plaintiff know that Defendants were concerned for him and she advised him that they would require an updated note from his doctor confirming that he was stable to return to work. (ECF No. 18-2 ¶ 15; ECF No. 13-18 at 2.) The email also states Ms. Bauman made Mr. Daniel "aware that further incidents will result in disciplinary action." (ECF No. 13-18 at 2.) On March 21, 2023, Plaintiff provided a note from his doctor clearing him to return to work the same day. (ECF No. 18-2 ¶ 16.)

On March 22, 2023, Ms. Bauman relayed to Ms. Eckert a phone call that she received from Plaintiff that day. (ECF No. 18-2 ¶ 17; ECF No. 13-19 at 2.) Ms. Bauman explained in the email that Plaintiff had stated his coworkers were sabotaging and harassing him. (ECF No. 13-19 at 2.) Ms. Bauman also wrote in the email that Plaintiff said he "likes to fight and that we need to listen because he is telling us that we need to watch the news and we will see Jeremy," Plaintiff's coworker who Plaintiff alleged was harassing him. (*Id.*) The email also states that Plaintiff "promise[d] with everything that he loves that he will come up here and make everybody's life a living hell."[3] (*Id.*) It is undisputed that Plaintiff also told Ms. Bauman during the phone call that as a Black man, he felt oppressed. (ECF No. 18-2 ¶¶ 20–21; ECF No. 18-4 at 3.) Plaintiff also

---

[3] Plaintiff denies that he made this threat during the phone call. (ECF No. 18-2 ¶ 18.) However, he does not dispute the existence of the email wherein Ms. Bauman documented the March 22, 2023 conversation with Plaintiff. (*Id.* ¶ 17.)

asserts that he told Ms. Bauman during the conversation that he was being discriminated against due to his disability and race/color. (ECF No. 18-2 ¶ 20.)

Ms. Bauman wrote to Ms. Carr and Ms. Eckert in her March 22, 2023 email that she notified a member of the surveillance department of her conversation with Plaintiff and notified the IT department that his credentials needed to be deactivated. (ECF No. 13-19 at 2.) In a separate email the same day, Ms. Bauman notified Ms. Eckert and Ms. Carr that she made Mr. Daniel's psychiatrist's clinical manager aware that she notified Defendants' Security and the State Police of Plaintiff's verbal threats to her. (ECF No. 13-21 at 2.) As presented in the briefing, Defendants terminated Plaintiff's employment "on or about March 22, 2023." (ECF No. 18-1 at 7.)

## I.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden of the moving party may be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has met its initial burden, the non-movant's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-movant fails to rebut by making a factual

showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## II.    RACE AND COLOR DISCRIMINATION CLAIMS (COUNTS I–II)

Title VII and the PHRA prohibit an employer from engaging in race and color discrimination against an employee. *See* 42 U.S.C. §§ 2000e-2, *et seq.*; Pa. Stat. Ann. tit. 43, §§ 951, *et seq.* Title VII discrimination claims are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). The Third Circuit has applied this framework to PHRA claims. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

Under *McDonnell Douglas*, a plaintiff can establish a prima facie case of employment discrimination by demonstrating that "(1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] sought to attain or retain; (3) [he] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). Then, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The burden then shifts back to the plaintiff to show that the employer's stated reason is pretext for discrimination. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015).

Defendants do not dispute that Plaintiff has met the first three factors to demonstrate a prima facie case of discrimination—they concede that Plaintiff is a member of protected classes because he is Black and African American, that he was qualified for his position, and that he

6

suffered an adverse employment action when he was terminated. (ECF No. 13-2 at 9.) Defendants argue that Plaintiff has failed to produce any evidence that suggests that his termination occurred under circumstances that could give rise to an inference of intentional discrimination. (ECF No. 13-2 at 10.) Such an inference may be supported "in a number of ways, including, but not limited to, (1) comparator evidence, (2) evidence of similar racial discrimination of other employees, or (3) direct discrimination from statements or actions by her supervisors suggesting racial animus." *Jarmon v. Trader Joe's Co.*, 660 F. Supp. 3d 357, 363 (E.D. Pa. 2023) (quoting *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 703 n.2 (3d Cir. 2010)).

Plaintiff has not put forth any evidence that would fall into these categories. His racial discrimination claim is solely based on the allegation that he was terminated in connection with the March 22, 2023 phone call with Ms. Bauman where Plaintiff complained of race and color discrimination.[4] (ECF No. 18-1 at 8.) This singular piece of evidence does not support a reasonable inference that Plaintiff's termination was motivated by intentional racial discrimination. First, the

---

[4] While Plaintiff alleges in his Complaint that he was subject to "more restrictive and onerous conditions" than similarly situated employees outside of his protected class (ECF No. 1 ¶ 50), Plaintiff does not mention these conditions in his Response and entirely fails to address the disparate treatment and hostile work environment theories of discrimination that Defendants spend significant time addressing in their Motion. (ECF No. 13-2 at 14-18.) Plaintiff's failure to address these arguments results in their waiver. *McCowan v. City of Philadelphia*, 603 F. Supp. 3d 171, 193 (E.D. Pa. 2022) ("District courts in the Third Circuit have held that when a plaintiff responds to a defendant's summary judgment motion but fails to address the substance of any challenge to particular claims, that failure 'constitutes an abandonment of those causes of action and essentially acts as a waiver of th[o]se issues." (collecting cases) (internal quotations omitted)). Even if Plaintiff's failure to address these arguments did not constitute waiver, the discrete instances Plaintiff cited during his deposition that allegedly showed he was subject to a "higher standard" than his colleagues, such as being asked to throw a manager's trash out on one occasion and being asked to clean up his appearance, appear on their face to be reasonable conduct by Defendants and do not suggest to this Court that Plaintiff was subjected to different standards than his coworkers. (ECF No. 13-2 at 15–17.) Similarly, Plaintiff's general allegation that he was subject to harassment by coworkers does not provide this Court with any sort of specificity that would allow it to conduct an analysis of whether such harassment created a hostile work environment. (ECF No. 18-3 at 4.)

statement itself that, "as a black man [Plaintiff] feels oppressed" is unclear as to whether the discrimination Plaintiff felt was as a result of his working environment or some other external factors. (ECF No. 18-2 ¶ 21.) Even if the Court did infer that his statement directly related to the racial discrimination that Plaintiff stated he experienced at work, Plaintiff's Response fails to identify any evidence of the discriminatory actions committed by the Defendants that Plaintiff faced at work and that led to him making this statement. (ECF No. 18-1 at 8); *see Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013) ("A plaintiff's subjective belief that race played a role in an employment decision is not sufficient to establish an inference of discrimination . . . ."). Therefore, without more, Plaintiff has failed to satisfy his initial burden of establishing a prima facie case of racial discrimination because he has failed to point to evidence that could support a reasonable inference that his termination was racially motivated.[5] Thus, the Court grants summary judgment for Defendants on Counts I and II.

## III.    DISABILITY DISCRIMINATION CLAIMS (COUNTS III–IV)

The ADA and the PHRA prohibit employers from discriminating against disabled employees. *See* 42 U.S.C. § 12112, *et seq.*; Pa. Stat. Ann. tit. 43, §§ 951, *et seq*. ADA disability discrimination claims are also analyzed under the burden-shifting framework established in *McDonnell Douglas*. *Sampson v. Methacton Sch. Dist.*, 88 F. Supp. 3d 422, 434 (E.D. Pa. 2015).

---

[5] Defendants argue in their brief that Plaintiff also fails to make out a claim under the "mixed-motive" theory of discrimination. (ECF No. 13-2 at 12-13.) However, because an employee bringing a claim under the "mixed-motive" theory must bring direct evidence of discrimination that is stronger than what is needed to establish a prima facie case under the *McDonnell Douglas* framework, and Plaintiff has failed to meet even the lower standard of evidence to establish a prima facie case under *McDonnell Douglas*, the Court does not see a need and therefore declines to analyze his claim under the "mixed-motive" theory. *See Campetti v. Career Educ. Corp.*, No. CIV.A. 02-CV-1349, 2003 WL 21961438, at *7 (E.D. Pa. June 25, 2003).

PHRA claims for disability discrimination use the same analysis as ADA claims.[6] *Castellani v. Bucks Cnty. Municipality*, 351 F. App'x 774, 777 (3d Cir. 2009).[7]

To establish a prima facie case of discrimination under the ADA and the PHRA, a plaintiff must show (1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir.2010). A person is disabled within the meaning of the ADA if he (1) has "a physical or mental impairment that substantially limits one or more major life activities of such individual," (2) has "a record of such an impairment," or (3) is "regarded as having such an impairment." 42 U.S.C. § 12102(1). As with a racial discrimination claim under Title VII, once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Fuentes*, 32 F.3d at 763. It is then the plaintiff's burden to demonstrate that the employer's stated reason is pretextual. *Willis*, 808 F.3d at 644.

As above, Defendants do not challenge that Plaintiff was otherwise qualified for the job. Although Defendants do not admit that Plaintiff's manic depression qualifies as a disability under

---

[6] While Defendants' Motion addresses potential arguments for a failure to accommodate claim because Plaintiff's Complaint avers that actions by Defendants "also constitute a failure to accommodate and a failure to engage in the required interactive process" (ECF No. 1 ¶ 70), Plaintiff does not address the failure to accommodate claim in his Response. Therefore, the Court need not address this claim. *See McCowan*, 603 F. Supp. 3d at 193.

[7] While Defendants contend that a mixed motive framework is appropriate to analyze Plaintiff's disability discrimination claims (ECF No. 9 at 3–4), a mixed motive framework is not permissible under the ADA or the PHRA as it relates to disability discrimination. *Suchocki v. FedEx Freight, Inc.*, No. 3:20-CV-01048, 2023 WL 2544360, at *11 n.25 (M.D. Pa. Jan. 17, 2023), *report and recommendation adopted*, No. 3:20-CV-1048, 2023 WL 2541325 (M.D. Pa. Mar. 16, 2023). Therefore, the Court will proceed under the same *McDonnell Douglas* framework used in the Title VII discrimination claims.

the ADA, they do not dispute that fact either. (*See* ECF No. 13-2 at 20.) Plaintiff, on his part, does not put forth any medical evidence of his disability and appears to assert that he was "regarded as" having a disability under the ADA. (ECF No. 18-1 at 9.) For purposes of the ADA, an employee is "regarded as" disabled when an employer "misinterpret[s] information about an employee's limitations to conclude that the employee is incapable of performing a wide range of jobs." *Ross v. Kraft Foods North America, Inc.*, 347 F. Supp. 2d 200, 204 (E.D. Pa. 2004). To be liable under this prong of the ADA, "the employer must regard[] the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled." *Id.* (internal quotations omitted).

An inference of "regarded as" disability discrimination may be made following adverse actions suffered by an employee shortly after an employer learns of the disability. *Eshleman v. Patrick Indus., Inc.*, No. CV 17-4427, 2018 WL 3219497, at *2 (E.D. Pa. July 2, 2018) (collecting cases); *Stewart v. Bally Total Fitness*, No. CV 99-3555, 2000 WL 1006936, at *5 (E.D. Pa. July 20, 2000) (temporal proximity of plaintiff's demotion, suspension, and dismissal to onset of symptoms of bipolar disorder was sufficient to raise an inference of "regarded as" disability discrimination).

Plaintiff has put forth evidence that Defendants regarded him as suffering from an impairment that substantially impaired his major life activities, as contemplated by the ADA. Mr. Daniel asserts that his manic depression affected his concentrating, thinking, and working. (ECF No. 18-3 at 4.) Defendants were aware that Plaintiff was hospitalized for his manic depression as of February 27, 2023, when Ms. Bauman spoke to Plaintiff about his ability to return to work and when Plaintiff informed Ms. Bauman of his request for leave for his health condition. (ECF No. 13-11 at 2.) Defendants were also aware as of that date that Plaintiff's health condition was so

10

severe that he was unable to work from February 18, 2023 until March 5, 2023, and they made the decision to require a doctor's note from Plaintiff before he could return to work. (ECF No. 18-2 ¶ 6; ECF No. 13-11 at 2.) The temporal proximity between when Defendants learned of Plaintiff's disability on or about February 27, 2023 and his termination on March 22, 2023, following behavioral issues that Plaintiff alleges were symptomatic of his manic depression (ECF No. 18-1 at 10), lead this Court to conclude that a reasonable jury could infer that Plaintiff suffered from "regarded as" disability discrimination.

Finding that Plaintiff has made out a prima facie case of disability discrimination, the Court now turns to the Defendants' proffered legitimate reason for firing him under the *McDonnell Douglas* framework. 411 U.S. at 802. Defendants argue that Plaintiff was fired due to his "concerning behaviors" leading up to his termination and the threats that he made to Ms. Bauman over the phone on March 22, 2023, including that he would come to Defendants' Parx Casino location and "make everybody's life a living hell." (ECF No. 13-2 at 10–11; ECF No. 13-6 at 4–5; ECF No. 13-7 at 2; ECF No. 13-14 at 2; ECF No. 13-15 at 2; ECF No. 13-16 at 2; ECF No. 13-18 at 2; ECF No. 13-19 at 2; ECF No. 13-25 at 3.) Furthermore, the same day that Mr. Daniel allegedly made the verbal threats to Ms. Bauman, she indicated that she deactivated his credentials and notified Defendants' Security and the State Police of the threats. (ECF No. 13-21 at 2.)

Defendants have offered a legitimate, non-discriminatory reason for their decision to terminate Plaintiff's employment, so the burden shifts back to Plaintiff to show that the concerns about his behavior at work and his alleged threats were merely a pretext for intentional discrimination based on his disability. *McDonnell Douglas*, 411 U.S. at 804. To discredit Defendants' proffered reason, Plaintiff must provide evidence that "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably

conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir.1994).

Plaintiff has not put forth sufficient evidence to cast a requisite level of doubt that his behavioral issues at work and the threats he made to Ms. Bauman were pretext for Defendants' discrimination, nor has he put forth any evidence that would allow a factfinder to infer that discrimination was more likely than not the cause of his termination. While Plaintiff disputes that he ever made the threats to Ms. Bauman (ECF No. 18-2 ¶ 18), this unsupported and self-serving deposition testimony is insufficient to defeat summary judgment. *See Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389, n.6 (3d Cir. 2015). There is a record, as exhibited in Ms. Bauman's emails and her deposition testimony, that Ms. Bauman felt threatened by Plaintiff following the March 22, 2023 phone call. (ECF No. 13-19 at 2; ECF No. 13-21 at 2; ECF No. 13-25 at 3.) In fact, she felt so threatened that she notified the State Police of Plaintiff's threat. (ECF No. 13-21 at 2.) Defendants' decision not to further investigate whether or not Plaintiff made the threat "is insufficient to establish pretext." *Grasty v. Davita, Inc.*, No. CV 21-2476, 2024 WL 3541001, at *11 (E.D. Pa. July 25, 2024) (collecting cases), *aff'd*, No. 24-2584, 2025 WL 2388298 (3d Cir. Aug. 18, 2025); (ECF No. 18-2 ¶ 19; ECF No. 18-4 at 3). Apart from the threat that Ms. Bauman allegedly received from Plaintiff, Defendants have also proffered evidence that other employees felt "actually afraid of [Plaintiff] and his aggressiveness" in the weeks and days leading up to his termination, which led to their decision to terminate him. (ECF No. 13-2 at 10–11; ECF No. 13-7 at 2; ECF No. 13-15 at 2; ECF No. 13-16 at 2.) Plaintiff has not offered any evidence that these stated reasons were mere pretext, or that the real reason for his termination was his disability. Accordingly, the Court grants summary judgment for Defendants on Counts III and IV.

## IV.    RETALIATION CLAIMS (COUNTS V–VII)

Plaintiff brings retaliation claims under Title VII, the ADA, and the PHRA. The elements of retaliation under these statutes are "essentially the same." *Garcia v. Vertical Screen*, 592 F. Supp. 3d 409, 422 (E.D. Pa. 2022). In the absence of direct evidence of retaliation, we consider retaliation claims for both statutes under the *McDonnell Douglas* framework. *See, e.g.*, *Fasold v. Justice*, 409 F.3d 178, 188 (3d Cir. 2005).

To state a prima facie case of retaliation under *McDonnell Douglas*, a plaintiff must show (1) that he engaged in an activity protected by Title VII or the ADA; (2) that the employer took an adverse employment action either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action. *See Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). As before, once a plaintiff establishes a prima facie case, the burden shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action. *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015). If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that "the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (quoting *Marra*, 497 F.3d at 300).

Plaintiff cannot establish a retaliation claim under Title VII because he did not engage in protected activity as contemplated by that statute. The anti-retaliation provision of Title VII protects those who participate in certain formal Title VII proceedings and those who oppose discrimination made unlawful by Title VII. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006), *as amended* (Sept. 13, 2006). While complaints protected under this second, "opposition" clause of Title VII "may be informal, they may not be so vague that they are not

constructive." *Collins v. Kimberly-Clark Pennsylvania, LLC*, 247 F. Supp. 3d 571, 601–02 (E.D. Pa.), *aff'd*, 708 F. App'x 48 (3d Cir. 2017). "Complaints must be specific enough to notify management of the particular type of discrimination at issue in order to constitute 'protected activity.'" *Mikell v. Marriott Int'l, Inc.*, 789 F. Supp. 2d 607, 618–19 (E.D. Pa. 2011) (quoting *Sanchez v. SunGard Availability Servs. LP*, 362 F. App'x 283, 288 (3d Cir. 2010)).

Plaintiff does not allege that he submitted any sort of formal Title VII complaint prior to his termination. Rather, he contends that the protected activity he engaged in under Title VII occurred during the March 22, 2023 phone call to Ms. Bauman when he told her that "as a black man he feels oppressed," "mentioned lawyers as it relates to how he felt he was being treated at work," and felt "his co-workers and managers were sabotaging him and that he felt threatened in his environment." (ECF No. 18-1 at 11.) Plaintiff's general complaints do not specify the actions that Plaintiff found discriminatory. His comment that "as a black man he feels oppressed", as noted earlier in this opinion, is unclear as to whether Plaintiff meant this in the context of the workplace or more generally. Plaintiff's reference to discussing his treatment at work with lawyers also does not specify what exact conduct Plaintiff found objectionable and discussed with his lawyers. Finally, Plaintiff has not submitted any evidence as to why he felt that his managers and coworkers were "sabotaging him" or making him feel threatened. In sum, Plaintiff's phone call with Ms. Bauman does not constitute protected activity for purposes of a prima facie case of retaliation under Title VII.

Turning to Plaintiff's ADA retaliation claim, Plaintiff contends that he engaged in "protected activity" under the ADA when he took a "one-time personal leave of absence" related to his manic depression. (ECF No. 18-1 at 12.) Defendants contend that Plaintiff never requested an accommodation for his mental health. (ECF No. 13-2 at 23.) This fact is therefore disputed and

14

inappropriate for the Court to determine on summary judgment. The parties do not dispute that Defendants took an adverse employment action when they terminated Plaintiff's employment. They do dispute, however, the causal connection between Plaintiff's termination and any protected activity he may have engaged in. (ECF No. 19 at 5.) As with Plaintiff's disability discrimination claim, the Court finds that the temporal proximity between Plaintiff's protected activity, when he was granted the leave of absence on or about March 8, 2023 and when he was fired March 22, 2023, is sufficient temporal proximity to establish a causal link.

Finding that there is at least a genuine dispute of material fact as to whether or not Plaintiff can make a prima facie case of retaliation under the ADA, the Court turns to the Defendants' proffered legitimate reasons for terminating his employment. As with Plaintiff's disability discrimination claim, the Court finds that Defendants have offered legitimate reasons for Plaintiff's termination, including his aggressive behavior toward coworkers and threats he made to Ms. Bauman. *See supra* Section III. Furthermore, as with the disability discrimination claims, the Court finds that Plaintiff has failed to demonstrate that Defendants' rationale for firing him was mere pretext. *Id.* For these reasons, the Court grants summary judgment for Defendants on Counts V, VI, and VII.

## V.      CONCLUSION

For the reasons discussed above, Plaintiff has failed to raise a genuine issue of material fact regarding whether he can meet his evidentiary burden to establish racial or color discrimination under Title VII or the PHRA, disability discrimination under the ADA or the PHRA, or retaliation under Title VII, the ADA, or the PHRA. Consequently, Defendants are entitled to summary judgment on all Counts. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**